[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury. CT Page 8275
Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Kaoru S. Sakurai, and the defendant were married on March 31, 1991, in Maebashi, Japan. The parties were also married on May 26, 1991, in Vingoker, Sweden. They were also married in South San Francisco, California in June, 1991. The plaintiff has resided continuously in the state of Connecticut for at least one year immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of the marriage and no minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state assistance.
The court finds the following additional facts.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that the defendant is primarily at fault for the breakdown of the marriage. The parties separated in September of 1996, when the plaintiff vacated the marital residence at One Coach Hill Drive, Danbury, Connecticut and moved to Dallas, Texas. She left almost everything in the home except for some clothing and other personal belongings.
The plaintiff was born on March 4, 1959, in Japan. The plaintiff came to the United States in September of 1982. She had a four year college degree in education in Japan. When she came to the United States, she enrolled in English classes. She lived in the San Francisco area and was student for approximately six months. When the parties were married in Japan, the plaintiff's parents paid for the wedding. The cost to them in American dollars was approximately $10,000.
The plaintiff was visiting her parents in Japan in 1997, when she incurred a back injury. She completed physical therapy for the injury. She did not lose any time from work due to that injury.
After coming to the United States, the plaintiff's first employment was as a waitress for one to two months. She was then briefly married. That marriage lasted from approximately 1983 to approximately 1984. She then worked for a Japanese trading company that was located south of San Francisco commencing the CT Page 8276 end of 1983. She remained with that employment for approximately four to five years. She was a data computer manager when she left that employment earning approximately $22,000 or $23,000 annually gross. She left that employment in approximately January of 1988, as a result of being selected by American Airlines to attend a six-week flight attendant training program. She completed her American Airlines flight attendant training program in November of 1988. In January of 1989, she obtained her real estate license and commenced working for a real estate company in January of 1989. She commenced working with American Airlines as a flight attendant on March 15, 1988, as a domestic flight attendant stationed out of Dallas/Fort Worth, Texas. Her flight attendant training had taken place in Dallas in the Dallas/Fort Worth area. She was based there as a flight attendant for approximately nine months. She then transferred to the San Francisco area as a domestic flight attendant. While employed as a flight attendant, she was a probationary employee for approximately six to nine months. She transferred from Dallas/Fort Worth to the San Francisco area because she owned a condominium in the San Francisco area and because there is a large Japanese community in the San Francisco area. After a period of time in San Francisco, she transferred from domestic to international flights with American Airlines commencing approximately March of 1991. In 1991, her income with American Airlines was slightly in excess of $22,000. She stopped working for the real estate firm of Coldwell-Banker in June of 1991. She had been averaging approximately twenty-five hours weekly at Coldwell-Banker in the San Francisco area. While employed by Coldwell-Banker, she had made two sales and also was involved in a few rentals. The reason that she left Coldwell-Banker was to become a full-time flight attendant with American Airlines on the flights to Tokyo, as well as due to her marriage to the defendant, as well as the fact that the real estate market was slow. She obtained her real estate broker license in June of 1992. She still holds her real estate broker license and last renewed it in San Francisco in January, 1997. A real estate broker license would allow her to have her own office and to hire agents to work for her, as well as to handle client funds. The plaintiff claims that her real estate career was adversely affected as a result of the defendant taking an assignment in January or February of 1992, as an international pilot with American Airlines. The court finds that that claim is not credible. After the plaintiff filed the present dissolution of marriage action, she resumed her flights to Tokyo out of Dallas/Fort Worth commencing May of 1995. Her position was changed from flight attendant to purser. She received two weeks CT Page 8277 training for that position in May of 1995, through American Airlines. American Airlines only uses a purser on international wide body flights. She presently works an average of nine days a month flying to Tokyo, consisting of three trips per month. Each trip lasts for approximately three days. That schedule constitutes a full-time schedule. She is able to work additional flights and could earn up to $35,000 to $40,000 annually with American Airlines.
When the parties married, the plaintiff owned a condominium in San Beruno, California. The condominium was purchased in 1986, for approximately $65,000 with 10 percent down and the balance financed by a mortgage. She still owns that property. The plaintiff had the defendant's name added to the title in the Spring of 1993, as part of the refinancing of a loan. The loan was refinanced in order to reduce the interest rate, and to reduce the term from thirty years to fifteen years. At the time of the refinancing, the fair market value of the condominium was approximately $75,000. The property is rented for $600 per month with the rental income covering most of the mortgage payment. When the parties married, the plaintiff had approximately $10,000 in a savings account.
The plaintiff's financial affidavit dated August 7, 1997, shows various bank accounts. She has a balance of $12,884 at the Gumna Bank in a checking account. That represents one-half of the amount that was in a Fleet joint account at the time the parties separated. When they separated, the plaintiff first withdrew $1465 from the joint Fleet account to be paid towards attorney's fees and then took one-half of the remaining balance of that account for herself. By agreement of the parties, she was allowed to continue to draw checks against that account after the parties separated until pendente lite alimony orders were entered on February 3, 1997, for the defendant to pay to the plaintiff $3000 per month commencing February 1, 1997. She has not withdrawn any money from the joint Fleet account from February 1, 1997 to the present time. The plaintiff also has $3302 in a credit union checking account. She uses that account to deposit the condominium rental income and pay the condominium mortgage payments. She also has $39,636 in a credit union savings account. All of the $3000 monthly payments made by the defendant to the plaintiff, totalling $21,000, have been deposited into that account. Part of the source of funds in that account is from her American Airlines weekly income. The plaintiff owns personal property, clothing and jewelry with value of $5000. She owns a CT Page 8278 1995 Volkswagen with a value of $8000. Her condominium has a value of $75,000 and a mortgage of $43,374 and a net equity of $31,626. She has a deferred compensation plan with Fidelity Investments/IRA with a value of $9795 as of June 24, 1997. She owned her Fidelity Investments/IRA at the time she married the defendant. Her 401K plan through American Airlines has a value of $30,985 as of June 30, 1997. She started her 401K plan in June of 1992. She also has a pension plan with American Airlines with a present value of $6014. Of that amount, $4486 was acquired during the marriage. Her present gross weekly income from American Airlines is $787. She has deductions for FICA of $60 per week, withholding of $137 per week, union dues of $8 per week, medical/dental insurance of $4 per week, and disability of $5 per week. The court is disallowing the 401K deduction as that is not a mandatory deduction. That results in a net weekly income of $573. Her total liability for attorney's fees for this dissolution action is $5200 with a balance due of $4000.
The plaintiff's financial affidavit shows a weekly expense for public transportation of $90. She flies from Dallas/Fort Worth to Tokyo once a month on American Airlines. That round trip ticket costs her $130. She then takes a train to where her parents live at a round trip cost of $150 to $200. The $90 shown is a combination of the costs of her round trip airline ticket and her round trip train ticket. Her affidavit also shows under recreation and activities with parents, $110 weekly. That is the cost for herself and her parents for taking them to a hot spring overnight when she visits them. She shows a weekly food expense of $80. Approximately $20 to $30 of that amount is for when she is visiting her parents and takes them out to restaurants. She shows her weekly exercise club expense of $7.67. She has already prepaid the three-year membership for that club at a cost of $33 per month.
In 1991, the plaintiff commenced flying between San Francisco and Tokyo. In 1992, the defendant was flying between New York and Europe, and between New York and South America. The following chart shows the income of the plaintiff and the defendant from American Airlines for the years 1991 through 1996.
 Plaintiff's Defendant's American Airlines American Airlines Gross Income Gross Income
1991 Joint Tax Return
CT Page 8279 Gross Wages, Social Security Wages and Medicare Wages $22,755.77
 Medicare Wages $120,739.07 Wages $118,345.32 Other $916.52
1992 Joint Tax Return
Medicare Wages $20,257.44 Wages $17,971.09
 Wages $142,299.90 Medicare Wages $130,200.00
1993 Joint Tax Return
Social Security Wages and Medicare Wages $15,421.98 Wages $12,369.06
 Wages $146,852.81 Medicare Wages $135,000.00
1994 Joint Tax Return
Social Security Wages and Medicare Wages $11,814.11 Wages $9,626.44
 Medicare Wages $162,097.58 Wages $152,857.58
1995 Joint Tax Return
Social Security Wages and Medicare Wages $15,996.05 Wages $12,808.17
 Medicare Wages $167,301.65 Wages $158,061.65
In 1996, the plaintiff filed an individual income tax return and her American Airlines medicare and social security wages were $30,544.42, and her wages were $24,440.54. In 1996, the defendant filed an individual income tax return. His wages from American Airlines were $169,936.
Approximately six months before the parties were married in CT Page 8280 Japan, they purchased real estate for $318,000 in the general San Francisco area. Both parties contributed to the down payment and a loan was also obtained from the defendant's father to use towards a down payment. The down payment consisted of 10 percent of the purchase price plus normal closing costs. Most of the $10,000 that the plaintiff had at the time she married the defendant went towards the down payment, with the defendant and his father contributing the balance of the down payment. The defendant has since repaid his father the amount borrowed that was used towards the down payment of the San Francisco home. The parties decided to sell that property in 1992, when the defendant was assigned by American Airlines to work out of New York. The property was sold in the summer of 1995, for $290,000. The parties lost the equity that they had put up to purchase the property.
The parties purchased the family home that they own at One Coach Hill Drive, Danbury, Connecticut in March of 1994, at a cost of $265,000. It was financed in part with a 90 percent mortgage. The present mortgage balance is $231,232. It has a fair market value of $275,000 and a total equity of $43,768. The parties are in dispute as to the value of the jointly owned furniture and furnishings at the family home in Danbury, Connecticut. The plaintiff claims that the total value is approximately $5000 and the defendant claims that the value is $2000. The court finds that the fair market value of the furniture and furnishings is $5000.
The defendant was born on February 23, 1958, in Finland. After graduating from high school and serving approximately one year in the Finland army, he came to the United States in June of 1978, for pilot training. He graduated pilot training in 1979. His first job was as a first officer flying for Air Cargo America and earning a $1000 monthly salary. he remained in that position until 1980. He was then employed by a subsidiary of American Airlines on a shuttle between St. Croix and St. Thomas, where he was a copilot. He remained in that position until approximately 1983, living in St. Thomas and St. Croix. His starting salary was $1200 monthly. He then was employed in California by Charter Service Resorts Airline as a captain. He remained in that position until December of 1984. His starting salary was approximately $2000 monthly. He was grossing $2500 monthly when he ended that position in December of 1984. He was then hired by American Airlines in January of 1985. His initial position was as a flight engineer based in San Francisco. His starting salary at CT Page 8281 American Airlines was $1500 monthly. He remained a flight engineer for approximately one year with American Airlines. He was then promoted to first officer (copilot). His starting salary as a copilot in 1986, was approximately $3000 monthly. In January of 1992, he was promoted to the position of captain. In April of 1996, he was promoted to his present position that involves his checking other pilots for proficiency.
He was previously married in 1982. That marriage lasted approximately seven years. He does not have any children from that marriage.
When the parties first married, the defendant was employed by American Airlines as an international copilot based in Chicago. He became an international copilot in June of 1991. In early 1992, the defendant was promoted to be a captain on international 767 flights with American Airlines based out of New York flying to Tokyo. He checks other pilots for their proficiency.
The defendant's gross weekly income through American Airlines is $3330. He has a deduction for withholding of $747 per week, FICA of $77 per week, Connecticut State tax of $140 per week, medicare of $48 per week, union dues of $53 per week, medical/dental insurance of $4 per week, and life insurance of $1 per week. The court is disallowing his deduction for credit union of $349 per week, 401K plan of $214 per week, and travel s/c of $78 per week. Therefore, his net weekly income is $2260 per week. He has a liability to First Union Leasing with an original balance of $20,553 and a balance due at the present time of $8127. The balance in the joint checking Fleet account is $2000. He has an American Airlines credit union savings with a balance of $31,500, a joint checking with the plaintiff at Union Bank with a balance of $981, and a joint checking with the plaintiff at Bank of America of $200. In March of 1997, he received a gross check from American Airlines for profit sharing based on the company's annual profits of $13,067.59 and a net check of $6,907.70. He has deferred compensation plans through American Airlines consisting of a 401K plan with a present balance of $105,155. Of that amount, $97,550 was acquired during the marriage. He has a defined contribution pension plan with American Airlines with a present value of $212,156. Of that amount, $108,900 was acquired during the marriage. He also has a defined pension fund with American Airlines with a present value of $71,248. Of that amount, $36,571.71 was acquired during the marriage. CT Page 8282
This court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provisions of sec; 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders.
ORDERS
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. No alimony is awarded in favor of either party.
C. BY WAY OF PROPERTY ORDERS
1. The court orders that the plaintiff pay the liabilities shown on her financial affidavit and hold the defendant harmless therefrom.
2. The plaintiff is to quitclaim all of her interest in the family residence at One Coach Hill Drive, Danbury, Connecticut to the defendant. He is to make all reasonable efforts to remove her from liability under the mortgage and promissory note. The defendant is to quitclaim to the plaintiff all of his interest in the condominium at 8157 Shelter Creek Lane, San Beruno, California. She is to make all reasonable efforts to remove him from liability under the mortgage deed and promissory note. Each deed is to be transferred simultaneously at the office of counsel for the plaintiff on October 24, 1997.
3. All of the furniture and furnishings in the possession of the plaintiff are awarded to the plaintiff. She is to return to the defendant his watch, jewelry and some various knickknacks that she holds that are owned by him.
4. All of the deferred compensation plans shown on the plaintiff's financial affidavit consisting of Fidelity Investments/IRA with a balance of $9795, a 401K plan with a balance of $30,985, as well as her American Airlines pension are all awarded to the plaintiff. CT Page 8283
5. All of the bank accounts shown on Schedule A to the plaintiff's financial affidavit are awarded to the plaintiff except for the Fleet Bank checking and the Union Bank checking that are both in joint names. The Fleet Bank checking and Union Bank checking are ordered divided equally between the parties.
6. The plaintiff's 1995 Volkswagen with a value of $8000 is awarded solely to the plaintiff.
7. All personal property, clothing and jewelry in the possession of the plaintiff are awarded to the plaintiff.
8. The liability shown on the defendant's financial affidavit is to be paid by the defendant and he is to hold the plaintiff harmless therefrom.
9. All furniture and furnishings in the possession of the defendant are awarded to the defendant.
10. The American Airlines Savings credit union account shown on the defendant's financial affidavit with a balance of $31,500 is awarded to the defendant.
11. The joint Bank of America account, shown on the defendant's financial affidavit with a balance of $200, is to be divided equally between the parties.
12. The deferred compensation plans shown on the defendant's financial affidavit under Schedule D are all awarded to the defendant.
13. The defendant is to pay to the plaintiff, as lump sum property, the sum of $140,000 as follows: (a) $65,000 is to be paid on October 24, 1997, simultaneously with the delivery of the deeds to the real estate located in Danbury, Connecticut and in San Beruno, California; (b) $37,500 is to be paid without interest on June 24, 1998; and (c) the remaining $37,500 is to be paid without interest on February 24, 1999. In the event any part of the $140,000 is not paid when due, then interest on the unpaid balance is to run at the rate of 10 percent per annum.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party. CT Page 8284
E. PENDENTE LITE ORDERS
1. Any pendente lite arrearages are not merged into the judgment and are to be paid by October 24, 1997. In the event they are not paid by October 24, 1997, then any unpaid amount is to include interest at the rate of 10 percent per annum.
F. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
2. The plaintiff is restored her maiden name of Kaoru S. Sakurai.
3. Any claim that the defendant may have against the plaintiff for the plaintiff having obtained his credit card information without his permission are considered to be merged into this judgment.
Axelrod, J.